1996 SD 76

**Scott MOSS, Plaintiff and Appellee,**

v.

**Steve GUTTORMSON, Arnold Guttormson, and Arnie's Meats and Seafood, Austin, Minnesota, each Defendant individually and collectively, Defendants and Appellants.**

Nos. 19188, 19197.

Supreme Court of South Dakota.

Considered on Briefs Nov. 28, 1995.

Decided June 26, 1996.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, Todd D. Wilkinson of Wilkinson & Wilkinson, DeSmet, for plaintiff and appellee.

Steven J. Helmers of Lynn, Jackson, Shultz and Lebrun, Rapid City, for defendants and appellants.

KONENKAMP, Justice.

[¶ 1] The issue presented is whether a salesperson adversely affected by product mislabeling can assert claims against the employer-distributor for deceit and for violating South Dakota's Deceptive Trade Practices and Consumer Protection law. We conclude the claims are sustainable under both theories.

### Facts

[¶ 2] In July, 1990 Scott Moss was hired as a South Dakota truck route salesperson for Arnie's Meats and Seafood of Austin, Minnesota. Arnie's used brochures to advertise and describe its products. One of the products it listed was sauger pike. Without telling its sales personnel or its consumers, Arnie's substituted pollock, a cheaper grade of fish, for sauger. It also mislabeled haddock and the weight of its lobster products. Based on this activity occurring between October 15, 1991 and September 18, 1992, one of Arnie's owners, Steve Guttormson, was charged in Minnesota with multiple criminal offenses. Pursuant to a plea agreement, he pled guilty to one count of aiding and abetting theft on July 22, 1993 and was placed on five years probation under certain conditions.

[¶ 3] Moss brought suit against Steve Guttormson, Arnold Guttormson (the other owner) and Arnie's Meats and Seafood (referred to hereafter collectively as Arnie's), alleging that at the time he was hired, the scheme to defraud customers was concealed from him, and that defendants were untruthful with him in answering his questions about their products. Claiming Arnie's dishonest practices marred his reputation, Moss premised his case on deceit and deceptive trade practices. He sought compensation for lost in-

come and benefits, mental suffering, and loss of business reputation, as well as punitive damages.

[¶ 4] Arnie's moved for summary judgment contending Moss, as an employee, had no standing to assert a claim under South Dakota's Deceptive Trade Practices and Consumer Protection law. Also, Arnie's maintained (1) Moss failed to establish Arnie's engaged in unlawful activity at the time Moss became a salesperson, and (2) Moss was unable to show he was induced to work as a salesperson based on any misrepresentation Arnie's made. The trial court denied the motions. A jury returned a verdict for Moss for $45,000, consisting of $20,000 compensatory damages and $25,000 punitive damages. Arnie's motions for judgment notwithstanding the verdict and a new trial were denied. We consider the following issue: whether the trial court erred in denying Arnie's motion for summary judgment for the claims based on deceit and deceptive trade practices.

### Analysis

[¶ 5] Our method for examining summary judgment questions is well-established:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

*Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989) (citations omitted).

### [¶ 6] A. Deceit

[¶ 7] A duty to disclose presents itself when an employment or fiduciary relationship exists. *See Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 499–500 (S.D.1990)(interpreting SDCL 20–10–2(3), al-

though finding no employment or fiduciary relationship existed in that case). "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20–10–1. "A deceit within the meaning of § 20–10–1 is ... (3) *The suppression of a fact by one who is bound to disclose it,* or who gives information of other facts which are likely to mislead for want of communication of that fact...." SDCL 20–10–2 (emphasis added). As an employment relationship was clearly established and undisputed, Arnie's owed a duty to disclose facts which it would be "bound to disclose." What one is bound to disclose is a fact question depending upon the particular circumstances of each case. "Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." *Laber v. Koch,* 383 N.W.2d 490, 492 (S.D.1986) (citations omitted).

[¶ 8] Arnie's maintains Moss failed to prove any misrepresentations induced him to accept a sales position. An action for deceit requires proof of material misrepresentation in the formation of the contract and detrimental reliance. *Littau v. Midwest Commodities, Inc.,* 316 N.W.2d 639, 643 (S.D. 1982); *Aschoff v. Mobil Oil Corp.,* 261 N.W.2d 120 (S.D.1977). Arnie's states Moss failed to produce "a scintilla of evidence" sufficient to sustain a claim under the deceit statute, because there was no evidence of deceit at the time Moss was hired. We disagree. In examining summary judgment issues our review envelops the entire record. *Piner v. Jensen,* 519 N.W.2d 337, 339 (S.D. 1994). No proof exists in the record that Arnie's timely answered Moss's requests for admissions, thus they were deemed admitted. *See* SDCL 15–6–36. We summarize the pertinent admitted facts:

Steve Guttormson caused misbranded food to be sold and false advertising to be distributed in South Dakota; he knew pollock was labeled and sold as sauger; he knew substituted pollock was sold in South Dakota; Moss was not told by Arnie's of its unlawful practices at the time he was hired; Steve Guttormson ordered or directed other employees to mislabel prod-

ucts sold in South Dakota during the years 1989 through 1992; Steve Guttormson received profit from Arnie's unlawful practices.

Moss was hired in 1990 and these admissions establish Arnie's was engaged in deceitful practices at that time. We see no error in denying Arnie's motion for summary judgment on Moss's deceit theory.

### [¶ 9] B. Standing to Assert Deceptive Trade Practices Claim

[¶ 10] Arnie's contends summary judgment was improperly denied because Moss, as an employee, lacked standing to assert a claim under SDCL Chapter 37–24, Deceptive Trade Practices and Consumer Protection. We reiterate the rules of statutory construction:

Questions of law such as statutory interpretation are reviewed by the Court de novo.... The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. But, in construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result. When the question is which of two enactments the legislature intended to apply to a particular situation, terms of a statute relating to a particular subject will prevail over the general terms of another statute.

*U.S. West Communications, Inc. v. Public Utilities Comm'n,* 505 N.W.2d 115, 122–23 (S.D.1993) (citations omitted).

[¶ 11] While SDCL Chapter 37–24 obviously assists consumers seeking relief as victims of deceptive trade practices, the broad statutory language includes more than only consumers. The statute provides, *"[a]ny person* who claims to have been adversely affected by any act or a practice declared to be unlawful by § 37–24–6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice." SDCL 37–24–31 (emphasis added). "Person" includes natural persons, partnerships, corporations (domestic or foreign), trusts, incorporated or unincorporated associations, and "any other legal entity." SDCL 37–24–1(8). Hence, an employee is a "person" within the purview of SDCL 37–24–31 who may be adversely affected by practices declared unlawful under SDCL 37–24–6.

[¶ 12] Other courts have similarly interpreted consumer protection statutes. In *Carlock v. Pillsbury Co.,* 719 F.Supp. 791 (D.Minn.1989), the plaintiffs' claims under both the Minnesota and Idaho Consumer Protection Acts were not limited to consumers. Franchisees in *Carlock* alleged the franchiser fraudulently concealed a change in the air content of bulk ice cream sold to them, constituting fraudulent conduct related to the quality or grade of the goods purchased. *Id.* at 850–51. Construing the Idaho Act, the *Carlock* Court stated:

Pursuant to Idaho Code § 48–602, "person" is defined as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity, or any agent or servant thereof." The Idaho Consumer Protection Act does not contain a separate definition of consumer, and section 48–608(1) is not limited by its terms to actions by consumers. The Court therefore finds that plaintiffs may proceed under the Idaho Consumer Protection Act.

*Id.* at 851. *See also Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 749 F.Supp. 869 (N.D.Ill.1990)(interpreting Illinois Consumer Protection Act, and holding plaintiff need not be a consumer to bring private action under Act, though definition of person included "employee"). *See generally,* Donald

M. Zupanec, *Scope and Exemptions of State Deceptive Trade Practice and Consumer Protection Acts,* 89 ALR3d 399 (1978).

[¶ 13] Arnie's next argues SDCL 37–24–31 requires a determination that a party violated SDCL 37–24–6 before commencing a lawsuit; as suit was brought before a violation of SDCL 37–24–6 was "declared," there can be no valid claim. Such a reading of the statute is incongruous. Moss had a factual basis to allege a violation of the statute. He was suitably given the opportunity to use proper discovery procedures to then prove the existence and extent of the violations. As it read before amendment in 1992, SDCL 37–24–6 stated in pertinent part:

> Such deceptive act or practice shall include, but is not limited to, the following:
>
> (2) Knowingly makes a false representation as to the source, sponsorship, approval, or certification of merchandise;
>
>    \*    \*    \*    \*    \*    \*
>
> (4) Knowingly uses deceptive representations or designations of geographic origin in connection with merchandise;
>
> (5) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of merchandise or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;
>
>    \*    \*    \*    \*    \*    \*
>
> (7) Represents that merchandise is of a particular standard, quality, grade, style, or model, if he knows that it is of another;
>
> (8) Advertises merchandise with intent not to sell it as advertised. . . .

Ample evidence confirmed Arnie's violation of SDCL 37–24–6, affording Moss a valid private cause of action under SDCL 37–24–31. In denying the motion for summary judgment, the trial court correctly ruled Moss had standing to sue. Both sides raise additional issues on appeal which merit no discussion as they are controlled by settled law.

[¶ 14] Affirmed.

[¶ 15] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.